## Select Motors, Inc. v. Kemp

*Silvestri Silvestri*, for plaintiff.

*Gregg H. Lewellyn*, for defendant.

McCUNE, J., April 10, 1967.—

### ADJUDICATION

And now, April 10, 1967, upon consideration of the stipulation filed by counsel, the court considers that a finding of the facts is unnecessary. They have already been stated by stipulation.

### DISCUSSION

On May 6, 1966, Milton B. Freeman, an individual, made a loan to Kemp, a known automobile dealer. On that date, he required no security before signing and turning over a check for $5,200. What transpired between Freeman and Kemp does not appear, but we know that the best case Freeman could make for himself if he were to testify is that in the middle of May, 1966, a blank title was given him by Kemp (blank in the sense that no transferee of the car was named on

the title). The title showed ownership to rest in Todd Motor Sales of Telford, Pa. This so-called blank title was held by Freeman until July 2, 1966, or thereabout, when it was mailed by someone to the Department of Revenue, where title was issued to Kemp with an encumbrance noted in Freeman's favor for $5,000.

Meanwhile, the automobile was left with Kemp, who was in the business of selling cars, and on May 19, 1966, Kemp sold the car to Select Motors, Inc. and delivered possession on May 20, 1966, collecting on delivery the purchase price and promising the title within a day or two.

It is unknown, of course, who actually had the blank title in his possession on May 20, 1966. We have assumed Freeman had it because he would have so testified, and we assume if Kemp had possessed it, he could and would have turned it over to Select Motors, Inc. Kemp lied when he said he could and would deliver title. He defrauded Select when he accepted payment knowing he could not obtain the title from Freeman.

Select now has the car, which cannot be sold or used without a title, and Freeman has, apparently, never been paid. The prayer of Select Motors in equity is that we order the title delivered to Select Motors, Inc., free and clear of the encumbrance.

Kemp admits all this and states he desires to deliver the title, but can't, because Freeman has it with the encumbrance noted and refuses to turn it over or satisfy the encumbrance.

The cases which have been cited deal with replevin actions in which the Uniform Commercial Code and The Vehicle Code have been thoroughly considered. They all concern the situation in which an individual buyer purchases a car from a dealer in the ordinary course of trade. They all conclude, of course, that such a purchaser takes free and clear of a security interest

in the vehicle, whether he knows of it or not. This is the law, because it is necessary, of course, that automobile dealers be permitted to sell their stock in trade freely and quickly and that buyers be able to depend on title. The sale of automobiles would surely be impeded if the law were otherwise. These cases deal with new cars, for the most part. They are not necessarily controlling here because two auto dealers were dealing with a known used car in the case before us.

We believe the law and the equities favor Select Motors, Inc. Although Select should have been vigilant (as Freeman's counsel argues), Freeman should also have been vigilant. They were equally careless in their dealings with Kemp. Apparently, Freeman issued a check as a loan depending on Kemp to mail him a title, and apparently Select issued a check for a car depending on Kemp to mail a title. While Select knew that used cars (as distinguished from new ones in dealers' showrooms) have titles, Freeman knew that a used car left with a used car dealer would probably be sold, and he may have inferred authority to sell it by the very act of allowing it to remain in the dealer's hands.

Freeman as an individual engaged in an illegal practice which a court in equity cannot condone. The Act of April 29, 1959, P. L. 58, sec. 212, 75 PS §212, provides that no person shall possess a certificate of title unless the name of the person who is the assignee, purchaser or lessee is placed on the assignment of certificate of title, simultaneously with the name of the assignor or seller. To do so is a summary offense. The act also provides that no person shall hold a certificate recorded in the name of another person for such person unless the one holding it has a valid encumbrance recorded in the department against such title.

In Commonwealth v. Smith, 72 D. & C. 53, 64 York 112 (1951), it was held to be a technical violation of the vehicle code for a creditor of the owner of a vehicle

to hold the certificate of title as security for a debt where the encumbrance had not been recorded.

Thus, we find that the parties were both careless, and Freeman was in an untenable position when the car was sold by Kemp to Select.

We find that the policy of the law favors the person buying from a dealer, for the reasons set forth in Main Investment Company v. Gisolfi, 203 Pa. Superior Ct. 244 (1964), although this case does not control the one before us due to the difference in circumstances.

We find that Freeman was forbidden to hold the title as he did without naming an assignee or purchaser or without placing an encumbrance against it. It is true that he did eventually have his encumbrance entered, but not until six weeks after the sale to Select Motors.

We reach the following conclusions of law:

1. At the time the automobile was sold and delivered by Kemp, to Select Motors, no security interest had been perfected.

2. The degree of carelessness exhibited by both claimants was such that no equities exist in favor of one or the other.

3. The policy of the law favors one who purchases from a dealer over one who claims a security interest in an automobile.

4. Defendant Freeman, by holding a blank title without any named assignee or encumbrance holder, was engaged in an illegal act and obtained no security interest thereby. (Freeman, of course, still has an unsecured claim against Kemp for the debt.)

## DECREE

And now, April 10, 1967, defendant Freeman shall, within 20 days from this date, deliver the subject title to Kemp with the necessary notation on the face of it that Freeman's encumbrance has been satisfied in

full. Defendant Kemp shall execute the assignment forthwith, passing title to plaintiff, and shall deliver said title to plaintiff.

Costs of this proceeding shall be paid by Kemp and Freeman, defendants.

This is a decree nisi. If no exceptions are taken within 20 days from this date, it shall become final.